UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| LEWIS DEAN MOSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:12-CV-049-BG |
| | ) | ECF |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

Plaintiff Lewis Dean Mosley seeks review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income. The undersigned has considered the administrative record, applicable law, and parties' arguments and now recommends that the court reverse the Commissioner's decision and remand Mosley's case for further administrative proceedings.

**I.**     **Standards of Review**

The standard under which the Commissioner reviews a claim for Social Security benefits involves a five-step sequential evaluation. 20 C.F.R. §§ 404.1520, 416.920 (2012). The administrative law judge (ALJ) decides whether the claimant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listing in the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. *Id*.

When a claimant appeals a decision denying benefits the court must determine "whether the Commissioner applied the proper legal standards and whether substantial evidence in the record

supports his decision." *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) (citation omitted).

## II. Statement of the Case

Mosley previously worked as a truck driver and was injured in 2005 during a rollover accident caused by a malfunction of the brakes on his truck. (Tr. 386.) He subsequently underwent a number of procedures to repair damage to his left leg and address hip and back problems. (Tr. 338, 404, 442, 485, 633, 635, 664.) Two years after the accident he was diagnosed with Paget's disease (Tr. 641, 643, 668–69), a disease that causes thickening and softening of bones such as the skull and bending of weight-bearing bones. *Stedman's Medical Dictionary* 562 (28th ed. 2006). An orthopedic surgeon thereafter reported that Mosley's mobility was restricted to activities of daily living. (Tr. 639–40.) He noted that Mosley could not perform significant lifting, bending, or twisting because such activities would place him at risk of additional injury and that the limitations would be necessary for at least a year or two. (Tr. 640.)

An examining psychologist determined that Mosley suffered from major depressive disorder after the accident in 2006 and noted in November 2007 that Mosley's depression "appear[ed] to have deepened." (Tr. 346, 637.) He referenced intelligence testing that indicated Mosley's cognitive ability was in the low average range and assigned Mosley a global assessment of functioning (GAF) of 48. (Tr. 343, 636–37.) An individual assigned a GAF of 48 would be expected to experience serious impairment in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text rev. 2000).

The ALJ held a hearing and determined that Mosley was not disabled at the fifth step of the sequential evaluation. (Tr. 20, 28–47.) He specifically determined that Mosley was capable of performing the full range of sedentary work and was therefore no longer capable of performing his

past work, which was performed at the medium and heavy exertional levels. (Tr. 18–20.) He then relied on rules 201.21 and 201.28 in the medical-vocational guidelines (guidelines) and determined that Mosley was not disabled based on criteria in the two rules. (Tr. 20.)

Located in the Commissioner's regulations at appendix 2 of part 404, the guidelines consist of rules that direct a finding that the claimant is not disabled when the claimant's residual functional capacity (RFC), age, education, and previous work experience correspond to the criteria under a particular rule. Rules 201.21 and 201.28 direct a finding that a claimant is not disabled if he can perform the full range of sedentary work, has at least a high school education, and previously performed unskilled work or skilled work but has no skills that would transfer to other jobs. 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 201.21, 201.28.

Citing Fifth Circuit precedent, Mosley argues that in cases in which the claimant suffers from a combination of exertional and nonexertional impairments and the ALJ finds the nonexertional impairments to be severe, the ALJ must consult with a vocational expert at step five of the sequential evaluation rather than relying exclusively on the guidelines. Mosley points out that the ALJ found at step two of the sequential evaluation that he suffers from a combination of severe impairments, including depression, but nonetheless relied exclusively on the guidelines to determine whether he was disabled. He claims the ALJ's exclusive reliance on the guidelines constitutes reversible legal error.

### III. Discussion

At the fifth step of the sequential evaluation the ALJ has already determined that the claimant has severe impairments and that his physical and mental limitations prevent him from returning to his past work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The ALJ is then required to consider the

3

claimant's RFC, age, education, and work experience to determine whether he is capable of making an adjustment to other work that exists in the national economy. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The ALJ may make this determination by relying on testimony from a vocational expert: "a vocational expert is called to testify because of his familiarity with job requirements and working conditions." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). The ALJ may also rely on the guidelines to make the determination, but he may do so only when the evidence shows that the claimant suffers solely from exertional impairments or when the claimant's nonexertional impairments do not significantly affect his RFC. *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999). Put another way, in a case in which the claimant suffers from a combination of exertional and nonexertional impairments, the ALJ may rely on the guidelines only if the claimant's nonexertional impairments do not significantly affect his RFC; otherwise, the ALJ must consult a vocational expert to determine whether the claimant can perform jobs that exist in the national economy. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Based on the applicable Social Security Rulings and Fifth Circuit precedent, the ALJ in this case should have consulted a vocational expert. Social Security Ruling 96-9p directs the ALJ to consult a vocational expert when the claimant exhibits a "substantial loss of ability" to perform any of the following mental activities: understanding, remembering, and carrying out simple instructions; making judgments that are commensurate with the functions of unskilled work; responding appropriately to supervision or co-workers; or dealing with changes in a routine work setting. SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996). The Ruling advises that a substantial loss in any of the foregoing work activities "may or may not significantly erode the unskilled sedentary occupational base"; therefore, "it may be useful to consult a vocational resource." *Id*.

In this case, a state agency medical consultant determined that Mosley would be markedly limited in the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 300.) Such a limitation would impede his ability to "respond appropriately to supervision." SSR 96-9p, 1996 WL 374185 at *9. Accordingly, the ALJ should have sought the expertise of a vocational expert. *Id*.

Well-established precedent requires the same. The Court of Appeals for the Fifth Circuit has directed that in cases in which the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, the Commissioner must rely on testimony from a vocational expert rather than the guidelines. *Loza v. Apfel*, 219 F.3d 378, 398–99 (5th Cir. 2000); *Newton*, 209 F.3d at 458. The court has specifically directed that reliance on the guidelines is inappropriate in cases in which the ALJ finds that the claimant's mental impairments are severe. *Loza*, 219 F.3d at 399. In *Loza,* the ALJ failed to apply the correct standard to assess the severity of the plaintiff's mental impairments and consequently found that the plaintiff's mental impairments were not severe. *Id*. at 392–93. The court reversed and directed that if the plaintiff's mental impairments were found to be severe at step two of the sequential evaluation, reliance on the guidelines at the step five of the evaluation would constitute error. *Id*. at 399.

The ALJ in this case found at the second step of the sequential evaluation that Mosley's depression was severe. (Tr. 12.) His reliance on the guidelines was therefore legal error. *Loza*, 219 F.3d at 399; *Hearne v. Barnhart*, No. 03-51406, 2004 WL 2244213, at *257 (5th Cir. Sept. 30, 2004) (ALJ's finding that claimant's depression was severe at step two of the sequential evaluation precluded him from relying on the guidelines at step five of the sequential evaluation.)

5

**IV.     Recommendation**

The ALJ committed legal error that requires remand. The undersigned therefore recommends that the district court reverse the Commissioner's decision and remand Mosley's case for further administrative proceedings.

**V.     Right to Object**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:     February 12, 2013.

NANCY M. KOENIG
United States Magistrate Judge